**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4793

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

JOSE BENJAMIN MANLAPAZ, a/k/a Mr. Ben, a/k/a Ben Manlapaz,

        Defendant - Appellant.

No. 18-4933

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

JOSE BENJAMIN MANLAPAZ, a/k/a Mr. Ben, a/k/a Ben Manlapaz,

        Defendant - Appellant.

No. 19-7514

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

JOSE BENJAMIN MANLAPAZ, a/k/a Mr. Ben, a/k/a Ben Manlapaz,

        Defendant - Appellant.

---

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, District Judge.  (1:17-cr-00115-AJT-1)

---

Submitted:  June 29, 2020                                  Decided:  August 19, 2020

---

Before GREGORY, Chief Judge, KEENAN, and WYNN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

John O. Iweanoge, II, THE IWEANOGES' FIRM, PC, Washington, D.C., for Appellant. Richard E. Zuckerman, Principal Deputy Assistant Attorney General, S. Robert Lyons, Stanley J. Okula Jr., Alexander P. Robbins, Katie Bagley, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C; G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jose Benjamin Manlapaz was sentenced to 108 months in prison after he was convicted by a jury of conspiracy to defraud the United States and commit mail and wire fraud, in violation of 18 U.S.C. § 371 (2018); 27 counts of assisting in the preparation of false tax returns ("false tax return counts"), in violation of 26 U.S.C. § 7206(2) (2018); one count of mail fraud, in violation of 18 U.S.C. § 1341 (2018); and five counts of wire fraud, in violation of 18 U.S.C. § 1343 (2018).  The charges against Manlapaz issued after the Internal Revenue Service ("IRS") discovered that Manlapaz, the sole owner of a Falls Church, Virginia, tax return preparation business known as JBM Financial Services, Inc. ("JBM"), helped clients prepare and file thousands of false tax returns and then created fake supporting documentation for clients who were audited by the IRS.

In these consolidated appeals, Manlapaz asserts that the district court erred when it: (1) denied Manlapaz's motion to dismiss several counts in the superseding indictment based on untimeliness; (2) denied Manlapaz's motion to suppress; (3) denied Manlapaz's motion for judgment of acquittal based on insufficiency of the evidence; (4) calculated Manlapaz's offense level, rendering Manlapaz's sentence procedurally unreasonable; (5) calculated the forfeiture amount attributable to Manlapaz and subsequently ordered that substitute assets be used to satisfy the forfeiture amount; and (6) calculated the restitution amount attributable to Manlapaz's crimes.  Finding no error, we affirm.

I.    *Motion to Dismiss*

Manlapaz asserts that the district court should have dismissed the conspiracy and mail and wire fraud counts against him because many of the overt acts with which he was

3

charged occurred outside the respective statutes of limitations. Manlapaz also asserts that the district court should have dismissed several of the false tax return counts because the limitations period for the charges was not tolled by tolling agreements into which he entered with the Government. This court reviews de novo a district court's ruling on a motion to dismiss counts in an indictment as time-barred when the motion was based upon a question of law, rather than on the existence of facts contained in the indictment. *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1398 (4th Cir. 1993).

As to the conspiracy count, it is undisputed that, because the superseding indictment against Manlapaz issued on March 15, 2018, only overt acts occurring after March 15, 2013, occurred within the applicable limitations period. Contrary to Manlapaz's argument, however, it is well-established that a prosecution for conspiracy is timely if just one alleged overt act in furtherance of the conspiracy occurred within the limitations period. *Id.* The conspiracy count against Manlapaz charged that, by at least 2007 through at least in or about May 2017, Manlapaz conspired with others to defraud the United States to commit mail and wire fraud. The superseding indictment also alleged several overt acts that occurred as part of this conspiracy, including 38 acts that occurred within five years of the indictment's issuance. We thus discern no error in the court's refusal to dismiss for untimeliness the conspiracy count against Manlapaz.[1]

---

[1] Manlapaz argues that the court effectively amended the indictment's conspiracy charge when the jury heard evidence of acts that occurred prior to the limitations period, but then was instructed to consider only acts within the limitations period when reaching a verdict on the conspiracy. He does not point to any evidence the jury heard that was not foreshadowed by the indictment. Rather, his argument appears to be that the jury was

We also discern no error in the court's refusal to dismiss as untimely the challenged mail and wire fraud offenses.  According to Manlapaz, the court should have dismissed those charges because they incorporated by reference the scheme and artifice to defraud identified in the conspiracy count, which included overt acts outside the limitations period.  Although the challenged counts did refer to the fraud scheme alleged in the conspiracy count, Manlapaz does not dispute that the substantive mail and wire fraud offenses alleged overt acts that actually occurred within the relevant five-year limitations period.  It is thus immaterial that the Government generally referred to an overall scheme to defraud that contained allegations of overt acts beyond the limitations period.  *See id.*

We similarly reject Manlapaz's assertion that, because a six-year statute of limitations applied to the false tax return counts, *see* 26 U.S.C. § 6531(3) (2018), any counts premised on returns filed before May 25, 2011, were time-barred.  Manlapaz entered into four tolling agreements with the Government in which Manlapaz agreed to extend the limitations period for the false tax return offenses.  Manlapaz argues that the tolling agreements are unenforceable because he received insufficient legal advice and because the agreements do not represent a voluntary waiver of the limitations defense.  But he points to no reason why we should not defer to the district court's credibility determinations—made after a hearing during which Manlapaz and his former counsel each testified—that Manlapaz received competent legal advice about the tolling agreements and that he

---

instructed to find a *narrower* conspiracy than that charged in the indictment. But such a narrowing of a conspiracy charge is permissible. *See United States v. Allmendinger*, 706 F.3d 330, 339 (4th Cir. 2013).

knowingly and voluntarily entered into the agreements. We therefore defer to those findings. *See United States v. Thompson*, 554 F.3d 450, 452 (4th Cir. 2009) ("[W]hen a district court's factual finding is based upon assessments of witness credibility, such finding is deserving of the highest degree of appellate deference." (internal quotation marks omitted)).

In the first tolling agreement, Manlapaz agreed that any false tax return offense for which the statute of limitations began to run on or after April 15, 2010, would be timely. He was indicted for false tax returns filed from April 6, 2010 to April 12, 2017. Because the statute of limitations for those returns filed between April 6 and 15, 2010 began to run on April 15, 2010, all the false tax return offenses for which he was indicted were timely filed. *See* 26 U.S.C. §§ 6513(a), 6531 (2018) (providing that the statute of limitations begins to run on the date the tax return is actually due to the IRS); *United States v. Habig*, 390 U.S. 222, 223-26 (1968) (holding that, if a tax return is filed before the usual April 15th due date, the statute of limitations does not begin to run until April 15th).

Accordingly, we discern no error in the district court's decision to deny Manlapaz's motion to dismiss.

## II.   Motion to Suppress

Manlapaz also asserts that the district court should have suppressed evidence law enforcement seized from his residence because he asserts law enforcement lacked probable cause to believe the residence contained evidence of his crimes. This court normally reviews de novo a district court's legal conclusions made in denying a motion to suppress and reviews its factual findings for clear error. *United States v. Seerden*, 916 F.3d 360,

365 (4th Cir. 2019). But, in this case, the district court never considered the merits of Manlapaz's motion to suppress evidence seized from his residence because it denied Manlapaz's motion for leave to file the suppression motion beyond the date ordered in the court's pretrial scheduling order. When a district court denies a motion to file an untimely motion to suppress, this court's review is only for abuse of discretion. *United States v. Mathis*, 932 F.3d 242, 256 (4th Cir. 2019); *see also United States v. Chavez*, 902 F.2d 259, 262-63 (4th Cir. 1990).

It is well-established that a motion to suppress evidence must be made by the deadline for pretrial motions set by the district court. *See* Fed. R. Crim. P. 12(b)(3)(C) & (c)(1). In fact, the failure to file a timely suppression motion "operates as a waiver," and a district court need not consider an untimely motion unless it finds "good cause" for the party's delay. *United States v. Moore*, 769 F.3d 264, 267 (4th Cir. 2014); *see* Fed. R. Crim. P. 12(c)(3). Here, the district court concluded there was no such "good cause" when Manlapaz filed his motion to suppress more than a month late because Manlapaz was in possession of the information underlying his motion well before the deadline.

Although Manlapaz devotes several pages in his opening brief to arguing in favor of his suppression motion, at no point does he acknowledge that the district court never reached the merits of the suppression motion. Accordingly, Manlapaz has waived this court's review of the district court's decision to deny the motion for leave to late file. *See Hensley v. Price*, 876 F.3d 573, 580 n.5 (4th Cir. 2017) (recognizing that waiver of this court's review occurs if a brief's argument section does not contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record

on which the appellant relies" (quoting Fed. R. App. P. 28(a)(8)(A))); *United States v. King*, 628 F.3d 693, 699 (4th Cir. 2011) (finding waiver where the defendant had "not even attempted to make . . . a showing" of good cause for an untimely challenge). In any event, we discern no abuse of discretion in the district court's denial of Manlapaz's motion for leave to late file the motion to suppress.

We thus reject Manlapaz's challenge pertaining to his motion to suppress.

### III.     *Motion for Judgment of Acquittal*

Next, Manlapaz challenges the sufficiency of the evidence supporting his convictions. As Manlapaz filed a motion for a judgment of acquittal on the same grounds he raises on appeal, we review the district court's denial of the motion for judgment of acquittal de novo. *United States v. Zelaya*, 908 F.3d 920, 925 (4th Cir. 2018). We will uphold the jury's verdict if, viewing the evidence in the light most favorable to the Government, substantial evidence supports the verdict. *United States v. Burfoot*, 899 F.3d 326, 334 (4th Cir. 2018).

In reviewing the Government's evidence, we must ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 855 F.3d 265, 268 (4th Cir. 2017) (internal quotation marks omitted). During this inquiry, we may not "assess witness credibility," however, and must "assume that the jury resolved any conflicting evidence in the prosecution's favor." *United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018) (internal quotation marks omitted). "A defendant bringing a sufficiency challenge must overcome a heavy burden" as reversal is

"confined to cases where the prosecution's failure is clear[.]" *United States v. Palomino-Coronado*, 805 F.3d 127, 130 (4th Cir. 2015) (internal quotation marks omitted).

To convict Manlapaz of conspiracy under 18 U.S.C. § 371, the Government was required to prove the existence of an agreement to defraud the United States or commit another offense, willing participation in the conspiracy, and an overt act in furtherance of the conspiracy. *United States v. Landersman*, 886 F.3d 393, 406 (4th Cir. 2018). To establish mail fraud in violation of 18 U.S.C. § 1341, the Government was required to prove that Manlapaz "knowingly participated in a scheme to defraud" and "mailed, or caused to be mailed, anything for the purpose of executing [the] scheme." *United States v. Pierce*, 409 F.3d 228, 232 (4th Cir. 2005) (internal quotation marks omitted). "A person 'causes' the mails to be used when he does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *Id.* (internal quotation marks omitted).

Similarly, the elements of wire fraud are: (1) a scheme to defraud; and (2) the use of a wire communication in furtherance of the scheme. *United States v. Vinson*, 852 F.3d 333, 355 (4th Cir. 2017). And to obtain a conviction for assisting in the preparation of false tax returns, the Government was required to prove that: (1) Manlapaz "aided, assisted, or otherwise caused the preparation and presentation of a return;" (2) "the return was false or fraudulent as to a material matter;" and (3) Manlapaz acted willfully. *United States v. Aramony*, 88 F.3d 1369, 1382 (4th Cir. 1996).

After reviewing the evidence in the light most favorable to the Government and deferring to the jury's credibility determinations, as this court must, we find that the

challenged convictions were supported by substantial evidence. We therefore discern no error in the district court's decision to deny Manlapaz's motion for judgment of acquittal.

### IV. *Procedural Reasonableness of Manlapaz's Sentence*

Manlapaz challenges the procedural reasonableness of his sentence on multiple grounds. None are persuasive.

First, Manlapaz challenges the loss amount used to calculate his offense level. He only glancingly disputes the amount itself, arguing in a conclusory fashion that the trial court erred by rejecting his calculation. He has therefore waived an appellate challenge to the calculation. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).

Manlapaz instead focuses his opening brief on challenging the loss amount under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), but this argument is "clearly without merit[,]" *United States v. Blauvelt*, 638 F.3d 281, 293 (4th Cir. 2011). Because the Sentencing Guidelines are advisory, judicial factfinding at sentencing does not violate the Sixth Amendment. *See Alleyne*, 570 U.S. at 116 ("We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment."); *see also Beckles v. United States*, 137 S. Ct. 886, 892 (2017) ("[T]he advisory Guidelines do not fix the permissible range of sentences . . . . [but] merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range."); *United States v. Gomes*, 605 F. App'x 147, 149 (4th Cir. 2015) (rejecting the defendant's argument "that the district court violated his Sixth Amendment right to a jury trial by judicially finding the loss amount rather than by submitting this question to the jury").

Additionally, Manlapaz asserts that the district court erred when it found that he was the leader of the conspiracy for which he was convicted, maintained organizational control, and exercised ultimate decisionmaking authority over JBM policies and procedures, thereby warranting a four-level increase to Manlapaz's offense level pursuant to U.S. Sentencing Guidelines Manual (USSG) § 3B1.1(a) (U.S. Sentencing Comm'n 2018). Although Manlapaz asserts that the Government failed to establish that he controlled or directed five or more participants, a four-level increase to a defendant's offense level is warranted if the defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]" *Id.* Thus, while the criminal activity must have involved five or more participants for the role enhancement to apply, the defendant need only have organized or led one other participant. *See* USSG § 3B1.1, cmt. n.2; *see also United States v. Thorson*, 633 F.3d 312, 318 (4th Cir. 2011) ("[T]he defendant need not be an organizer or leader of all of the participants involved in the criminal activity so long as he was an organizer or leader of one or more other participants." (internal quotation marks omitted)). We agree with the district court that the Government met its burden of establishing that Manlapaz was an organizer or leader of the crimes for which he was convicted and that he organized or led at least one other participant.

Manlapaz has thus failed to establish that the district court erred when it calculated his Guidelines range.

V. *Forfeiture*

We also reject Manlapaz's arguments pertaining to the district court's forfeiture orders. It is undisputed that the district court was required to order forfeiture in the amount

11

of Manlapaz's criminal proceeds. *See* 18 U.S.C. § 981(a)(1)(C) (2018); 28 U.S.C. § 2461(c) (2018); *United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014). During a forfeiture hearing, then, the Government was required to establish the forfeiture amount by a preponderance of the evidence, *United States v. Tanner*, 61 F.3d 231, 234-35 (4th Cir. 1995), and was able to obtain forfeiture of any property that had a "substantial connection" to the offenses of which Manlapaz was convicted, *United States v. Miller*, 911 F.3d 229, 232 (4th Cir. 2018).

In calculating the forfeiture amount, the district court was entitled to consider any evidence in the record, as well as any additional evidence or information provided by the parties that the court found "relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). We review the district court's legal conclusions underlying the forfeiture calculation de novo and its factual findings for clear error. *United States v. Oregon*, 671 F.3d 484, 490 (4th Cir. 2012).

Manlapaz first argues that the district court and jury erroneously assumed that money that was wired to the Philippines, as well as money found in his safe deposit boxes, was distinct from the funds deposited into JBM's bank accounts. In other words, he posits that the forfeiture calculation may have double-counted money that entered the bank account but then was withdrawn as cash and placed in a safe deposit box or wired overseas. He also contends that the district court and jury failed to consider that the bank account assets could have been derived from legitimate JBM business.

We discern no clear error in the district court's determinations. Even though many of JBM's clients paid in cash and the money wired to the Philippines was usually cash, the

record demonstrated that no substantial cash withdrawals were taken from JBM's bank accounts during the relevant time period.[2] Nor was money wired back from the Philippines. Based on this record, the district court could reasonably conclude that the proceeds located in the bank accounts did not represent all of the income derived from Manlapaz's crimes, but rather that a significant quantity of cash obtained by virtue of those crimes also made its way to the safe deposit boxes or was wired to the Philippines without first passing through the bank accounts—in other words, that there was no double-counting.[3]

We also reject Manlapaz's arguments that the district court violated his due process rights because the court issued a substitute asset order without first affording Manlapaz an opportunity to respond to the Government's motion, or that the substitute assets do not qualify as such under 21 U.S.C. § 853(p) (2018). It is well-established that the Government may seek forfeiture of substitute assets when a defendant does not have the money to satisfy a money judgment. *Oregon*, 671 F.3d at 487. In such cases, 21 U.S.C. § 853(p) permits the forfeiture of other, substitute, property, and requires a court to order the forfeiture of

---

[2] Manlapaz alleges some specific instances in which cash was wired to the Philippines from the JBM account. But he has waived those arguments by failing to properly present them. An appellant's arguments must be raised in his opening brief and must cite to the record. *See* Fed. R. App. P. 28(a)(8)(A); *Hensley*, 876 F.3d at 580 n.5; *Grayson O*, 856 F.3d at 316.

[3] Manlapaz also devotes a single sentence to arguing that the money wired to the Philippines should have been attributed to his co-conspirator, not to him. Such a "passing shot" at raising an issue is insufficient and results in waiver. *Grayson O*, 856 F.3d at 316.

13

"any other property of the defendant" up to the value of the proceeds if, "as a result of any act or omission of the defendant[,]" the proceeds:

> (A) cannot be located upon the exercise of due diligence;
> (B) [have] been transferred or sold to, or deposited with, a third party;
> (C) [have] been placed beyond the jurisdiction of the court;
> (D) [have] been substantially diminished in value; or
> (E) [have] been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1)-(2). "Section 853(p) is not discretionary; rather, the statute mandates forfeiture of substitute assets when the tainted property has been placed beyond the reach of a forfeiture." *United States v. Alamoudi*, 452 F.3d 310, 314 (4th Cir. 2006) (internal quotation marks omitted).

Moreover, "any other property" means just that—there are no limits on what property may be substituted for the proceeds. *United States v. Fleet*, 498 F.3d 1225, 1229-30 (11th Cir. 2007). Thus, there is no requirement that substitute assets be connected to the offense giving rise to forfeiture. *See, e.g.*, *Honeycutt v. United States*, 137 S. Ct. 1626, 1633 (2017) (describing § 853(p) as "permit[ting] the Government to confiscate property *untainted by the crime*" (emphasis added)).

The district court here found that the § 853(p) conditions were met as to the $7.2 million in proceeds, a finding Manlapaz does not challenge on appeal. Instead, Manlapaz argues that § 853(p) is not satisfied because the Government was aware of the existence of the *substitute* assets (his residence, watches, and bank accounts) before trial. This argument fails because what is relevant in the context of substitute assets is the unavailability of the *original* forfeiture assets. *See United States v. Chamberlain*, 868 F.3d

14

290, 297 (4th Cir. 2017) ("[A] forfeiture order covering substitute property may issue only upon a showing, after conviction, *that directly forfeitable assets have been rendered unavailable*." (emphasis added)).

Moreover, contrary to Manlapaz's suggestion that his due process rights were violated because the court issued the substitute asset order without first affording him an opportunity to respond to the Government's motion, we find that Manlapaz had ample opportunity to—and, in fact, did—object to the forfeiture of the substitute assets.[4]  Thus, due process was fully satisfied.  *United States v. Smith*, 656 F.3d 821, 827-28 (8th Cir. 2011) (holding that the defendant received procedural due process where the indictment provided notice of forfeiture, the defendant filed a motion opposing forfeiture, and the court allowed argument at a hearing before the final forfeiture order was entered).

Next, Manlapaz argues he was entitled to have the jury decide the substitute asset issue.  But Fed. R. Crim. P. 32.2(e) specifically provides that there is no right to a jury trial when the Government seeks the forfeiture of substitute property.  *See Alamoudi*, 452 F.3d at 315 ("[A]n order authorizing forfeiture of *substitute* assets pursuant to § 853(p) does not require a jury determination[.]").

---

[4] More than a year before the court's order forfeiting substitute assets, the Government's motion for a preliminary order of forfeiture argued that the residence, watches, and bank accounts were proper substitute assets.  Manlapaz filed a memorandum in opposition in which he objected to the Government's request for the forfeiture of substitute assets.  Later that month, the district court held a sentencing hearing at which Manlapaz had an opportunity to argue against forfeiture.

15

Finally, although Manlapaz suggests that some property should not have been subject to forfeiture because it belonged to his wife, Fed. R. Crim. P. 32.2 provides that a defendant may not object to forfeiture on the ground that the property is owned by someone else. Rather, the rights of third parties are to be determined in ancillary proceedings under Fed. R. Crim. P. 32.2(c). *See United States v. Cox*, 575 F.3d 352, 358 (4th Cir. 2009).

Accordingly, we discern no error in the district court's preliminary or substitute asset forfeiture orders.

VI.  *Restitution*

Finally, Manlapaz challenges the amount of restitution the district court ordered he pay the IRS. While acknowledging that restitution is meant to make the victim of a crime whole, Manlapaz asserts that the Government speculated as to the amount of loss.

It is undisputed that the Mandatory Victims Restitution Act ("MVRA") applies in this case. 18 U.S.C. § 3663A (2018). The MVRA requires courts to order restitution "in the full amount of the victim's loss caused by certain federal offenses." *United States v. Ritchie*, 858 F.3d 201, 207 (4th Cir. 2017) (internal quotation marks omitted). To obtain restitution under the MVRA, the Government was required to establish the actual loss amount by a preponderance of the evidence, at which point "the burden shift[ed] to the defendant to dispute th[at] amount with [his] own evidence." *United States v. Stone*, 866 F.3d 219, 227 (4th Cir. 2017). We review a district court's restitution order for abuse of discretion. *Id.* at 224.

Despite Manlapaz's arguments to the contrary, the MVRA does not require absolute precision so long as there is a basis for reasonable approximation. *See United States v.*

16

*Savoie*, 985 F.2d 612, 617 (1st Cir. 1993); *see also In re Sealed Case*, 702 F.3d 59, 66 (D.C. Cir. 2012) (recognizing that a restitution amount need not "be proven with exactitude" and "determining the dollar amount of a victim's losses attributable to the defendant will often be difficult and . . . will inevitably involve some degree of approximation, which is not fatal" (internal quotation marks omitted)). Moreover, district courts must calculate restitution based on "the unique circumstances of each case[.]" *Ritchie*, 858 F.3d at 214.

We have reviewed the method under which the Government—as accepted by the district court—calculated the restitution amount and conclude that the Government did not, as Manlapaz suggests, merely present a statistical sampling to approximate that amount. To the contrary, the sampling to which Manlapaz refers was merely a quality control method to verify that a subset of filed returns claimed an education credit falsely. The restitution calculation was based solely on those false-education-credit returns; thousands of returns claiming other false credits were not even considered by the Government in its calculation. We discern no abuse in discretion in the district court's determination that the Government's methodology was reasonable and reliable and that its restitution calculation was clearly conservative. *See, e.g.*, *United States v. Kumar*, 617 F.3d 612, 634 (2d Cir. 2010) (affirming the use of a loss calculation that relied on "an artificially narrow subset of victims"); *United States v. Masek*, 588 F.3d 1283, 1289 (10th Cir. 2009) (affirming the use of conservative calculations).

We have considered Manlapaz's assignments of error and find no reversible error by the district court. Accordingly, we affirm the criminal judgment against Manlapaz, as

well as the district court's restitution and forfeiture orders.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*